No. 44,030

ARGENTINE CITIZENS COMMITTEE, *Appellant,* v. URBAN RENEWAL
AGENCY and THE CITY OF KANSAS CITY, KANSAS, *Appellees.*

(399 P. 2d 553)

Opinion filed March 6, 1965.

*Thomas C. Lysaught,* of Kansas City, argued the cause for the appellant.

*David W. Carson,* of Kansas City, argued the cause, and *John K. Dear, Ernest N. Yarnevich, John William Mahoney, Joseph T. Carey, John H. Fields* and *C. W. Brenneisen, Jr.,* all of Kansas City, were with him on the briefs for the appellees.

The opinion of the court was delivered by

HATCHER, C.: This is an appeal from a judgment in an action challenging the jurisdiction and authority of an urban renewal agency to designate standards and controls for rehabilitation of properties in an urban renewal project.

The facts which were stipulated may be briefly summarized.

The City of Kansas City, Kansas has elected to have its urban renewal powers exercised by an urban renewal agency. A board has been duly appointed for such purpose. The City Commissioners approved a resolution finding that an area known as the Silver City Project was a deteriorated, blighted and slum area, and appropriate for an urban renewal project. The Urban Renewal Agency approved an Urban Renewal Plan for the Silver City Project and submitted it to the City Commissioners for their approval.

The Urban Renewal Plan provided that certain land was to be acquired for clearance and redevelopment, other land was to be acquired for park purposes and other property was to be acquired for the purpose of rehabilitation. The plan further provided that some land not designated for acquisition might, under special conditions, be acquired by the Urban Renewal Agency if the owners refused to cause such property to be rehabilitated to comply with

the standards and controls for rehabilitation, fixed by the Urban Renewal Plan, within three years. The City of Kansas City had by ordinance previously established "minimum housing standards," for the entire city pursuant to K. S. A. 17-4759. The minimum housing standards fixed by the city were less demanding than the standards fixed in the Urban Renewal Plan for rehabilitation.

The City Commissioners passed a resolution which provided for notice of a public hearing on the Silver City Project and after such hearing approved the Urban Renewal Plan for the Silver City Project area. A petition was filed in the district court asking for a declaratory judgment as to the powers of the Urban Renewal Agency and alleging in specific terms the facts we have stated generally. A motion for summary judgment was lodged against the petition and sustained by the district court. Plaintiff has appealed raising but one contention which it states as follows:

"Appellant contends that G. S., 1961 Supp. (now K. S. A.), 17-4756 (*b*), requires that any plans for compulsory rehabilitation (17-4748 [*f*]) and for fixing minimum standards and enforcing them (17-4759) can only be exercised by the city since these powers are by law excepted from what can be delegated to the Urban Renewal Agency."

It should first be noted that K. S. A. 17-4748, which gives to the city broad powers in connection with urban renewal projects, contains the following introductory provision:

"Every municipality shall have all the powers necessary or convenient to carry out and effectuate the purposes and provisions of this act, including the following powers in addition to others herein granted: . . ."

Subsection (*f*) of this section states as follows:

". . . Such plans may include, without limitation: (1) A general plan for the locality as a whole, (2) urban renewal plans, (3) plans for carrying out a program of voluntary or compulsory repair and rehabilitation of buildings and improvements, (4) plans for the enforcement of state and local laws, codes, and regulations relating to the use of land and the use and occupancy of buildings and improvements and to the compulsory repair, rehabilitation, demolition, or removal of buildings and improvements, . . ."

K. S. A. 17-4756, which gives the city the power to delegate the exercise of urban renewal project powers to an urban renewal agency or board, states in part as follows:

"(*a*) A municipality may itself exercise its urban renewal project powers (as herein defined) or may, if the local governing body by resolution determines such action to be in the public interest, elect to have such powers exercised by the urban renewal agency (created by section 16 [17-4757]) except the powers listed in section 7 [17-4748] (*h*). . . ."

It will be noted that this section permits all of the powers dele-

gated to the cities in connection with urban renewal projects to be exercised by an urban renewal agency with the exception of the powers listed in K. S. A. 17-4748 (h). Therefore, the powers listed in K. S. A. 17-4748 (f) as quoted above are powers which the city may have exercised by an urban renewal agency.

It must be conceded that the powers granted by K. S. A. 17-4759 cannot be exercised by an urban renewal agency. The section provides in part as follows:

"(a) Whenever any municipality finds that there exist in such municipality dwellings which are unfit for human habitation due to dilapidation, defects increasing the hazards of fire, accidents or other calamities, lack of ventilation, light or sanitary facilities, or due to other conditions, including those set forth in subsection (c) hereof, rendering such dwellings unsafe or insanitary, or dangerous or detrimental to the health, safety or morals, or otherwise inimical to the welfare of the residents of such municipality, power is hereby conferred upon such municipality to require or cause the repair, closing or demolition or removal of such dwellings in the manner herein provided. . . ."

These provisions apply to a city as a whole and therefore cannot be exercised by an urban renewal agency operating only in a blighted area. The above provisions were not enacted for the purpose of being applied to an urban renewal project but were to enable a city to remove dwellings unfit for habitation located any place in the city. The fact that an urban renewal agency is given no powers under K. S. A. 17-4759 in no way detracts from the powers that were granted under K. S. A. 17-4748 (f) and which were extended to urban renewal agencies by the provisions of K. S. A. 17-4756

It might further be suggested that the standards and controls for rehabilitation of properties were fully set out in the Urban Renewal Plan. They were necessarily approved by the governing body of the municipality (K. S. A. 17-4747 [d]) after a public hearing (17-4747 [c]) before they became applicable to the property covered by the plan and controlling (17-4747 [f]). Such approval by the governing body of the municipality made the standards and controls for rehabilitation the acts of the city.

We must conclude that an urban renewal agency may include standards and controls for rehabilitation of properties in an urban renewal plan and when approved by the governing body of the municipality as provided by K. S. A. 17-4747 they become applicable to the property covered by the plan and are controlling.

The judgment is affirmed

APPROVED BY THE COURT.